**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

MADISON MEHARG,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:25-CV-02497-DC-ICD

FINDINGS AND RECOMMENDATIONS

Plaintiff Madison Meharg (Plaintiff) brings this action for judicial review of a final decision of the Commissioner of Social Security (Commissioner or Defendant) under 42 U.S.C. §§ 405(g) and 1383(c)(3). Pending before the Court are Plaintiff's opening brief, construed as a motion for summary judgment (ECF No. 17), Defendant's responsive brief, construed as a cross-motion for summary judgment (ECF No. 19), and Plaintiff's reply brief (ECF No. 20). For the reasons discussed below, the undersigned recommends that Plaintiff's motion for summary judgment be granted in part and the Commissioner's final decision be remanded solely to determine what jobs exist in the national economy that Plaintiff may perform considering her mathematical capabilities.

## I. BACKGROUND

On December 15, 2019, Plaintiff filed an application for Supplemental Security Income (SSI), alleging her disability began on July 30, 2017. CAR 15, 84, 224.[1] Plaintiff's claim was initially denied on September 23, 2020 and upon reconsideration on February 1, 2021. *Id.* The claimant filed a written request for hearing received on February 4, 2021. *Id.* On September 2,

[1] Citations are the to the Certified Administrative Record (CAR) lodged on December 4, 2025, ECF No. 11.

2021, Administrative Law Judge (ALJ) Pearline Hardy held a telephone hearing. CAR 32. On September 17, 2021, the ALJ issued an unfavorable decision, finding that Plaintiff is not disabled. CAR 15-26. On June 30, 2023, the Court remanded the case pursuant to a stipulation of the parties. CAR 653. On July 24, 2024, the ALJ assigned to the case, Sarah Gillis, denied Plaintiff's claim after rehearing. CAR 567. On June 24, 2025, the Appeals Council denied a rehearing. CAR 561.

In the July 24, 2024 decision, the ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had worked during the relevant period but had not engaged in substantial gainful activity since the application date. CAR 572. At step two, the ALJ found that Plaintiff had the following severe impairments: Turner syndrome with widened aortic valve and widened root/arch, Fuchs' dystrophy, borderline intellectual functioning (BIF), anxiety disorder, obsessive-compulsive disorder (OCD), history of learning disorder, and depressive disorder. CAR 573. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. CAR 573–77.

Before proceeding to step four the ALJ considered Plaintiff's residual functional capacity (RFC) and found her to be capable of performing a range of light work as defined in 20 C.F.R. § 416.967(b). CAR 577. Specifically, the ALJ concluded that Plaintiff had:

> "the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant cannot climb ladders, ropes, and scaffolds; cannot work around heights or dangerous machinery; and should avoid concentrated exposure to extreme heat and humidity. She can understand, remember, and carry out simple instructions; can perform tasks [that] do not involve a specific production rate of pace, such as assembly line work or an hourly production quota; can deal with occasional changes in a work routine; [and] can have occasional interaction with supervisors, coworkers, and the public."
>
> CAR 577.

Because Plaintiff did not have any past relevant work experience, the ALJ proceeded to step five and considered Plaintiff's ability to make a successful adjustment to work available in the national economy. *See* CAR 583. Based on the testimony of the vocational expert, the ALJ

concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy"—specifically identifying the representative occupations of office helper, routing clerk, and mail clerk—and that a "finding of 'not disabled' is therefore appropriate". CAR 583–84.

## II. LEGAL STANDARD

The Court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence in the record as a whole and whether the ALJ applied the proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance, and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). However, the Court "may not affirm simply by isolating a specific quantum of supporting evidence," *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989), and may review only the reasons provided by the ALJ in the disability determination, *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). If substantial evidence supports the administrative findings, or if conflicting evidence supports a particular finding, the Commissioner's finding is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987). Where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. DISCUSSION

Plaintiff raises three challenges to the ALJ's 2024 decision: (1) the ALJ erred as a matter of law by failing to properly consider Plaintiff's residual functional capacity; (2) the ALJ erred as a matter of law by failing to properly consider the persuasiveness of the prior administrative medical findings; and (3) the ALJ erred as a matter of law by failing to properly consider Plaintiff's subjective complaints. ECF No. 17 at 1–2. For the reasons below, the undersigned finds that the ALJ erred by improperly considering Plaintiff's difficulties with mathematics when determining what jobs exist in the national economy that suit Plaintiff. The case should be remanded for proceedings solely on this issue.

### A. Residual Functional Capacity

Plaintiff argues that the ALJ erred as a matter of law by failing to properly consider Plaintiff's residual functional capacity. For the reasons below, the undersigned agrees with Plaintiff in part.

In assessing a claimant's RFC, an ALJ must consider limitations imposed by all of a claimant's medically determinable impairments, including those that are not severe, and provide a narrative discussion explaining how the evidence supports each conclusion. 20 C.F.R. § 416.945(a)(2)–(3); SSR 96-8p, 1996 WL 374184, at *5, *7 (July 2, 1996). However, an ALJ is not required to adopt the verbatim phrasing of a medical opinion into the RFC so long as the RFC restrictions reasonably translate and capture the substance of the limitations assessed. See *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023).

First, Plaintiff argues that although the ALJ found consultative examiner Megan Stafford, Psy.D.'s opinion persuasive (CAR 581), the ALJ failed to incorporate Dr. Stafford's moderate limitations in the ability to perform activities on a consistent basis without special or additional instructions and the ability to deal with the usual stress encountered in the workplace. ECF No. 17 at 5–7; ECF No. 20 at 2–3. The ALJ noted that Plaintiff attends community college classes a few times a week, works part-time at a fast-food restaurant where she interacts with customers and counts change, and occasionally requires help on the job. CAR 574–75, 578. In the RFC, the

ALJ restricted Plaintiff to understanding, remembering, and carrying out simple instructions, performing tasks that do not involve a specific production rate of pace (such as assembly line work or an hourly production quota), dealing with only occasional changes in a work routine, and having only occasional interaction with supervisors, coworkers, and the public. CAR 577. The undersigned concludes that the ALJ properly accounted for Dr. Stafford's opinion and demonstrated a continuous, reasoned evaluation of Plaintiff's mental functioning as a whole. Specifically, limiting Plaintiff to simple instructions with no specific production-rate pace, no hourly quotas, and only occasional routine changes and social interaction reasonably translates and accommodates moderate limitations in handling usual workplace stress and working without special or additional instructions. *See Kitchen*, 82 F.4th at 740.

Second, Plaintiff contends that the ALJ ignored her high school Woodcock-Johnson math scores—which fell more than two standard deviations below the mean, placing her in the bottom two percent of the population—when formulating the RFC and identifying step-five jobs. ECF No. 17 at 7–9; ECF No. 20 at 3–4. Plaintiff notes that these scores were corroborated by Dr. Stafford's WAIS-IV arithmetic subtest score of 4 and Dr. Stafford's observation that Plaintiff could not perform serial threes or calculate that seven quarters equaled $1.75. ECF No. 17 at 8 (citing CAR 243, 403–04). In the decision, the ALJ noted that Plaintiff "was able to obtain mostly satisfactory grades" in college classes and worked a job that "required counting change". CAR 574–75. While Plaintiff's experience working as a part-time fast-food cashier undercuts a claim of total mathematical incapacity, the ALJ cited three jobs at step five—office helper (DOT 239.567-010), routing clerk (DOT 222.687-022), and mail clerk (DOT 209.687-026)—all of which require a General Educational Development (GED) Math Level 2. CAR 584; *see U.S. Dep't of Labor, Dictionary of Occupational Titles* (4th ed. rev. 1991) (DOT), App. C. GED Math Level 2 requires the ability to "[a]dd, subtract, multiply, and divide all units of measure," "[p]erform the four operations with like common and decimal fractions," "[c]ompute ratio, rate, and percent," and "[d]raw and interpret bar graphs". DOT, App. C. Because the ALJ neither discussed Plaintiff's standardized math testing nor resolved the apparent conflict between

Plaintiff's documented mathematical deficits and the GED Math Level 2 requirements of the step-five occupations, the step-five determination is not supported by substantial evidence.

**B. Prior Administrative Medical Findings**

Plaintiff argues that the ALJ erred as a matter of law by failing to properly consider the persuasiveness of the prior administrative medical findings (PAMFs) of State agency psychological consultants Norman Zukowsky, Ph.D., and L. Colsky, M.D. ECF No. 17 at 9–11; ECF No. 20 at 4. For claims filed on or after March 27, 2017, the Commissioner evaluates the persuasiveness of medical opinions and PAMFs under 20 C.F.R. § 416.920c rather than assigning controlling weight based on a treating relationship. *Woods v. Kijakazi*, 32 F.4th 785, 789–92 (9th Cir. 2022). Under the revised regulations, the ALJ must consider five factors: supportability, consistency, relationship with the claimant, specialization, and "other factors". 20 C.F.R. § 416.920c(c)(1)–(5). The two most important factors are "supportability" and "consistency," and the ALJ must articulate how she considered both factors for each medical source. 20 C.F.R. § 416.920c(b)(2). For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be". 20 C.F.R. § 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be". 20 C.F.R. § 416.920c(c)(2). Although the revised regulations displaced prior precedent requiring "specific and legitimate" reasons to reject an examining or treating physician's opinion, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence". *Woods*, 32 F.4th at 792.

The undersigned disagrees with Plaintiff's argument that the ALJ committed reversible error in her evaluation of the PAMFs. Drs. Zukowsky and Colsky opined that Plaintiff could perform simple, routine work involving 1–2 step job tasks and instructions. CAR 79–81, 99–103.

The ALJ found their findings generally persuasive as to simple, routine tasks, but rejected the limitation to 1–2 step tasks because (1) it was inconsistent with Plaintiff's ability to perform fast-food work, and (2) it was "not vocationally defined" for use in an RFC assessment. CAR 582. Even assuming the ALJ erred in characterizing a 1–2 step task limitation as vocationally undefined, *see Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002–04 (9th Cir. 2015), any such error was harmless because the ALJ provided an independent, valid reason supported by substantial evidence. Specifically, the ALJ reasonably found that a restriction to 1–2 step tasks was inconsistent with Plaintiff's demonstrated ability to work a fast-paced drive-through window on busy weekends at McDonald's while attending college. CAR 582, 596, 600, 616.

**C. Subjective Complaints**

Plaintiff argues that the ALJ's evaluation of her subjective complaints did not offer "clear and convincing" reasons for its findings. ECF No. 17 at 11. Where a claimant establishes objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014); *Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022). Although the clear-and-convincing standard does not require the Court itself to be convinced, it "requires an ALJ to show [her] work" with a rationale "clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499. In weighing a claimant's statements and testimony, the ALJ may consider objective medical evidence, the nature and severity of the symptoms, treatment history, daily activities, and inconsistencies between the claimant's allegations and the clinical record. *See Bunnell v. Sullivan*, 947 F.2d 341, 345–47 (9th Cir. 1991) (en banc); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); 20 C.F.R. § 416.929(c)(3).

Plaintiff argues that the ALJ ignored the Woodcock-Johnson test scores, improperly used evidence of daily activities, improperly inferred an ability to work full-time based on Plaintiff's part-time work, and did not consider Plaintiff's function report. ECF No. 17 at 12–15.

Plaintiff's argument regarding the Woodcock-Johnson test scores is fundamentally about Plaintiff's mathematical abilities, which the undersigned has already addressed above. As to testimony regarding Plaintiff's daily activities, the ALJ noted that Plaintiff is "still able to perform activities that require some of the same abilities necessary for obtaining and maintaining employment." CAR 579 (emphasis added). The ALJ did not base her opinion solely on the discrepancy between Plaintiff's testimony and her daily activities, and the Court concludes that the ALJ's explanation is strong enough that it has "the power to convince." *Smartt*, 53 F.4th at 499. The ALJ considered that Plaintiff had "worked while in school as a cashier." CAR 580. Plaintiff's contention that the ALJ erred is without merit. The ALJ properly considered Plaintiff's experience working while in school and her general independence in her activities of daily living. *Id.* Here, the ALJ did enough to demonstrate that the totality of the record supports the inference that she is capable of full-time work.

Plaintiff's function report and Plaintiff's mother's third-party function report were not explicitly discussed by the ALJ. However, neither of these reports constitutes medical evidence that the ALJ is specifically required to articulate a reason for disregarding. *See Garrison*, 759 F.3d at 1014–15. Furthermore, the substance of both Plaintiff's report and her mother's report is captured by the ALJ's decision and reasoning. Both reports provide general testimony regarding Plaintiff's day-to-day functioning and symptoms. The ALJ considered Plaintiff's daily activities in her decision, and the information in the lay testimony was generally reflected in the medical opinions the ALJ consulted. *See, e.g.*, CAR 399–405. For the foregoing reasons, the undersigned finds that the ALJ properly evaluated Plaintiff's subjective complaints.

**IV. CONCLUSION**

Based on the foregoing, the undersigned recommends that:

1. 1. Plaintiff's motion for summary judgment (ECF No. 17), be GRANTED IN PART, and this matter be remanded for further administrative proceedings before an ALJ solely for the purpose of determining what jobs exist in significant numbers in the national

economy that Plaintiff can perform, considering the existing record and Plaintiff's mathematical capabilities.

2. Defendant's cross-motion for summary judgment (ECF No. 19), be GRANTED IN PART.

3. The Commissioner's final decision be REVERSED and this matter be REMANDED for further proceedings consistent with these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **14 days** after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within **14 days** after service of objections. Failure to file objections within the specified time may waive the right to appeal. *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 24, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE